I'll take up the case for argument 0355473, the California Board of Equalization v. Cool Fuel, Inc. Each side has 20 minutes. Good morning. If it pleases the Court, this is a tax case in which – I'm sorry, could we get your name for the record, please, sir? I'm sorry, Your Honor. Joseph M. O'Heron, Deputy Attorney General representing the California State Board of Equalization. Thank you, sir. If it pleases the Court, this is a tax case in which 11.2 million gallons of the debtor's diesel fuel was sold and delivered to retailers and not to another wholesaler. For each gallon sold, the debtor recovered its cost, made a profit, and erroneously listed the sales on his books and records as sales to another wholesaler. The Board's claim for unpaid excise tax and interest is approximately $2.6 million. Debtor admitted that the sales were made to retailers in its amended disclosure statement, and the Board, through the declarations of Rice and Berrigan, proved that the sales were not made to a – to the wholesaler listed in the debtor's tax returns, but rather to retailers. Is it a question of whether he embezzled the fuel, sold it, and gave some money back to Cool Fuel, or whether he sold the fuel and then embezzled the tax? And if it is a question, is that an issue of fact that we can't decide and shouldn't have been decided by the district court? That is exactly the situation. Ostensible authority is not usually a matter that can be decided on summary judgment. Well, everything can be decided on summary judgment. Nothing is usually decidable on summary judgment unless there's facts show that it's a matter of law, et cetera, et cetera. So the problem is, are there facts here in dispute? And if there's facts, are there facts here in dispute that summary judgment can't decide it? In which case, you don't win. You just – you win here, but you don't win yet. Is that right? The banner goes back to summary – to the court, to the trier of fact for that very determination. Is there a material issue, a genuine issue of material fact that needs to be addressed by the trier of fact as opposed to presentation of summary judgment? Now, if that's true, and if the intermediate appellate court in this case, that is the district court, just got standard review wrong, just fouled it up, should we be hearing it at all? Should we send it back to the district court to do its review under the proper standard? Clearly, the district court, in the board's view, got it wrong in terms of the standard that was applied. Procedurally, it should go back. All right. But, Chair, also, but you're asking, though, that's different than what your posture has been from the standpoint, because you're saying the district court got it wrong in granting coal fuel summary judgment, and you're saying that you were entitled to it. So those are a little bit inconsistent, aren't they? Not really, and the reason why is this is a tax case which is governed by two provisions within the Revenue and Taxation Code. The first of these provisions is Revenue and Taxation Code 8736, which provides that a wholesaler of fuel who sells and delivers the fuel to a retailer shall, at the time of sale, collect the tax from the retailer. The second provision, Revenue and Taxation Code 8738, provides that the tax required to be collected by the wholesaler constitutes a debt owed by the wholesaler to the state. The way these two statutes work is the first, 8736, imposes a duty of collection on the wholesaler. The second, 8738, imposes a duty, or rather, the debt for the tax on the wholesaler. Neither of these statutes is conditioned upon whether or not the wholesaler's employee complies with the proprieties of the tax law. But it does matter whether the employee embezzled the gasoline, the fuel, the oil. We do not concede that the employee embezzled the fuel. I know you don't. The employee acted at all times within the course and scope of his employment. That's your position, but that's a fact issue, isn't it? Arising out of the facts as they developed in this case, did he actually take the fuel and then sell it, or did he not take the fuel? No, he did not take the fuel. Well, you say no, but there's no question of fact you're saying. So where are we? I think you said a moment ago you thought there were issues of fact here. Yes, because if you expect to – you said the district court got it wrong when it granted coal fuel summary judgment, but you're also asking this court to grant you summary judgment and say that you're – and end this litigation, correct? Correct. But you were just telling Judge Fernandez before that there are tribal issues, and that's why it needs to be reversed and remanded. It can't have it both ways. The way that it should be decided is based upon the statutes as they are written. It was error not to have applied 8736 and 8738 as they are written. Let me go at it. Let me ask this thing, get to it a different way. You moved for summary judgment, too, didn't you? There were cross motions for summary. What were you asking for in that motion for summary judgment? We were asking the court to apply 8736 and 8738 as they are written, which is the wholesaler's fuel is delivered to a retailer. But did you contend in that motion the facts were undisputed? The debtor admitted in its amended disclosure statement that the fuel in issue here was sold and delivered to a retailer. That is what is encompassed within the statutory provisions. See, here's the problem, though. You say the facts are undisputed in one direction. They say they're undisputed in a different direction. And, yeah, I know that when both people make a summary judgment motion, one is tempted to say, well, let's give them what they want. But it could be that the facts are actually disputed. You think they're undisputed one way. They think they're undisputed the other way. Maybe it needs to be tried. My question about the district court was, was the district court's standard of review of the bankruptcy court. The bankruptcy court grants summary judgment, right? That's correct, Your Honor. And then the district court thought that it reviewed that for factual decisions for clear error, right? Right. And that's clearly wrong. Right. Okay. Regarding this dispute, the embezzlement is disputed. The fact that the fuel was sold and delivered to retailers is not disputed. Both sides acknowledge that the fuel was sold and delivered to retailers. If you apply the statute as it is written, the sale and delivery to a retailer imposes the liability for the tax on the wholesaler. Let me ask you a question. The seller, right? The seller wholesaler? The seller is a wholesaler. If the seller were not Cool Fuel, but the seller instead was some third party who embezzled fuel from Cool Fuel, then Cool Fuel wouldn't be responsible for the tax, would it? Yes. Cool Fuel is responsible. Yes. I'm sorry. The bad question. Cool Fuel is responsible for the tax because for two reasons. First, it was Cool Fuel's fuel that was sold to the retailers in this case. Second, the Board never admitted, although on page 16 of the debtor's brief, they make the assertion that the Board admitted that the employee, Mr. Hill, as an individual, sold the fuel to retailers. Well, look, suppose you didn't admit it. So what? You did not admit that, but they still say that's the case, that Mr. Hill, was it? Stole the gasoline, put it in his own company, actually, his own shell operation, which may have just been accounting stuff. They say he stole the gasoline and he sold it. Now, clearly, the Board, if that were true, let's say that's true for a moment, that actually he stole it and sometime later he sold it. Is Cool Fuel then responsible for the tax? Yes. On your view? Mr. Hill is not a wholesaler. There's a declaration in the record to that effect. Yes. The purported burn company, High Desert, is not a wholesaler for the fuel in issue in this case. In order to be a wholesaler, you must have a permit. If you do not have a permit, you are not a wholesaler. So, in other words, if I manage to get a whole bunch of fuel by committing a really clever fraud and I get a whole bunch of fuel allocated to me and I sell it wholesale to retailers, you can't put a tax on me because I don't have a certificate as a wholesaler. Is that your position? If you are not the wholesaler... I know I am. I'm actually... If you are the... Whoa, wait a minute. I've got all this fuel and I'm selling it to retailers. Do you have a permit? No. You are not a wholesaler. So I don't have to pay any tax, correct? Mr. Hill would... That's exactly the argument Mr. Hill would make if we were to go after Mr. Hill. I understand the argument he would make. I want to know the argument you would make. So I sell zillions of gallons of gasoline that I acquire by fraud from a manufacturer. I do it by fraud because they think I've got a certificate, but I don't. And I'm just so slick. And I sell millions of gallons of gasoline to retailers. And your position is I wouldn't owe any taxes. I'm not a wholesaler. So you guys just lose all the tax. Is that correct? I mean, that would be your legal position, correct? It's a hypothetical which I have not addressed. Well, but it's in this case. It's Mr. Hill. The hypothetical is called Mr. Hill. And your argument, your statement was, well, he's not a wholesaler. And I'm trying to the question I'm asking you is, so what? Yes, but Cool Fuel is the wholesaler. It is Cool Fuel's obligation, duty, and responsibility once it receives that permit to carry forth with that's now my fuel, I am responsible for the excise tax on it, and I'm responsible for supervising and seeing that my employees and officers carry out in an appropriate manner the duties that are assigned to them. Let me change subjects for a second. Suppose we find there is a fact question about whether the fuel was embezzled, who sold it, who didn't sell it. We send it back for trial to the bankruptcy judge. There's an outstanding order requiring you to answer some interrogatories and produce some documents, right? Privileged documents, yes, which is the second part. So you say they're privileged. The judge said they're not. But what about the interrogatories? What excuse do you have for not answering the interrogatories? It's not the interrogatories. It's the request for admission. Well, wasn't there an interrogatory 11? Interrogatory 11 is the one where a request for admission was turned into 235 interrogatories. And Judge March said, fine, answer it. Isn't that within her discretion to do? She did not. No application was made for her to exercise that discretion. The argument that Cool Fuel makes is by implication. That's what the Court did. There's no order to that effect. You review the orders. It does not say there was an application or permission sought. They didn't file a motion to compel? Cool Fuel did file a motion to compel. And you answered. We don't have to answer it because it's too voluminous. And she said, they're right, you're wrong. Answer them. In order for us to assert and maintain the impropriety of what Cool Fuel did in that interrogatory, turning one request for admission into 235 interrogatories, we objected. We preserved it. We did everything that we could possibly do procedurally to bring that before the Court. It's here now. We took a writ. We filed an appeal. We pursued it before the district court. The district court, as this Court is aware, did not read it. But at some point, don't you just, if you can't get your appeal, at some point, don't you just have to do what the Court says? I mean, it's not up to you to decide. No. It is for this Court to decide, and it is brought before this Court to determine the propriety of turning one interrogatory, one request for admission. Well, it is here now because of the summary judgments. That is correct. But in terms of when you just have a discovery order that you want to appeal in the middle of things, obviously that gets limited review, and you didn't make it on a writ, correct? We did, yes. You didn't win, did you? We never got it heard. What happened was the summary judgment proceeded to the point where summary judgment was granted before the writ was considered. It was interlocutory in terms of procedurally how it was brought up the line for decision by the Court, and the summary judgment overtook the processing of that writ. We have at all times preserved the issue through our appellate process. Well, you can preserve it, all right, but the question is whether you would ever be entitled to a writ simply on a order to answer interrogatories where we're not talking about privilege. Now, you do have some privilege stuff out there, I know, but aside from that, we're talking about Interrogatory 11. Why should we hear it at all? It should go back and you should finish your trial, shouldn't you? Because Interrogatory 11 requires the Board to make the disclosures of the privilege material. Well, if we decide that she was within her discretion to require you to answer the interrogatories that you objected to, do I understand correctly, then, that her order, if we affirm her order, you are then precluded from contradicting the admissions that they asked you to admit? If the Court were to affirm that we were required to disclose the privileged information — I'm talking Interrogatory 11 now. Interrogatory 11 asks on what basis do you state your position relative to these requests for admissions. In order to fully expound upon that, we would have to disclose third-party taxpayer information, which the statutes absolutely prohibit and make it a criminal violation to do so. I understood your objection to 11 was that it was too voluminous. No. What it does, and the case law that has addressed this, is you cannot use a interrogatory directed to requests for admissions to convert one interrogatory into a multiplier of all the requests for admissions that you have asked. That's exactly what the case addresses that the Board has cited to the Court. But you didn't challenge 11 on privilege. You didn't — I mean, you just said a couple — like 90 seconds ago that it was too voluminous. I'm sort of seeing this as a moving target here. If you don't mind, may I? You've got about two minutes left. If you want to reserve any for rebuttal, this would be maybe the time. All right. I'll reserve and balance my time for rebuttal. Thank you, Your Honor. Thank you very much, sir. Good morning. Good morning, Your Honor. I'm Thomas Hanrahan from Sidley, Austin, Brown & Wood for Cool Fuel. Let me begin by sort of picking up with the questions that both Judges Fernandez and Judge Callahan asked at the outset, which is do we have disputed issues of facts here, and did the district court adopt or apply the wrong standard of review? I think the questions that I think you asked Judge Callahan to the effect that, look, both sides moved for summary judgment. Are you really telling us that there are disputed issues of fact here? And the answer is no. There aren't any material issues that are in dispute. As we kind of explained this to the bankruptcy judge, there was no argument for the district court. There are several different grounds on which Cool Fuel is entitled to summary judgment. Those grounds are independent of each other. And as between the two or three of them, you may find that there are some differences of factual interpretation, if you will, between our view of it and the Board's view of it. But under any of those several approaches, Cool Fuel is entitled to judgment here. We already lost on the statute of limitations. That came up and went back. We said wrong. That was not one of the three of them, Your Honor. All right. But there were three. And one of them was the embezzlement argument. One of them was the agency issue on which the bankruptcy judge and the district court eventually ruled, not addressing either of the others. And the third one was the one that is addressed in the briefs here, and that is that the Board has effectively admitted in a series of responses to requests for admission that a fly-by-night operation, but nonetheless real, that operate under the name of High Desert, sold this fuel to retailers. And High Desert, as the Board's admissions candidly say, was an outfit composed of and comprised of Mr. Hill and others. We know who some of those others are. They have largely first names. They go by Sam. They go by Muhammad. You may have used these aliases or whatever they are, but didn't this ultimately get rung up on Cool Fuel's cash register, this sale? Part of the sale did. Part did not. Cool Fuel got paid for its wholesale cost of the fuel, plus about a $50,000 profit on it. That much is undisputed. But to put this in the embezzlement context that you asked about initially, Judge Fernandez, Bruce Hill and others, some of the others may have included some of the folks at Sunshine Western. That much I will concede is going to remain a mystery. But Bruce Hill and others, in the Board's words, arranged to obtain fuel from Cool Fuel under false pretenses. And the false pretenses in the Board's view of the world is they said, look, you're obtaining this fuel in the guise that the buyer is Sunshine Western. And that was false. Now, that is an embezzlement of the fuel. And that's what the Clancy case is all about. When you take your employer's merchandise under false pretenses and you resell it to somebody and you don't give back the full amount that you received, that's an embezzlement. The question, then, is. . . Well, if you say so. I'm sorry? If you say so, I suppose. But, of course, they never took the fuel. You know, if you're stealing your employer's loaves of bread, you carry them out the front door and you do something with them. I gather that the fuel never really went to storage tanks at a thing called, you know, Hill's Maggi. No. The fuel. The fuel went straight zip to the retailer. Correct? As it always does. As it always does. Good sale or honest sale or dishonest sale. That's exactly the way it works. And that's undisputed. Undisputed. We have a bunch of accounting entries is what we have. What it comes to is a bunch of accounting entries. Well, what you have is. . . One can characterize it that way, I suppose. I mean, it's certainly a business that operates more or less instantaneously. Well, it's just. . . He just writes up a little schedule thing. He just makes. . . Well, but it's not just him. It's not just Mr. Hill. So it's his son and a couple of other sleazeballs, let's say. But that's what he does. Well, sure. But there are other legitimate companies whose records verify that. Including, by the way, the board's own records that identify High Desert as the seller. And I don't mean just their response to requests for admissions. I'm also talking about their own internal records that identify the volume of fuel sold by High Desert. Their spreadsheets that they described but apparently had not maintained or kept that identify fuel moving from cool to intermediate companies and then to retailers. Their own records that identify their own internal memoranda, including memoranda by Mr. Lehman, who is the head of the special enforcement section, that identify fuel as going from cool fuel to a wholesaler to a retailer. And he identifies that wholesaler as High Desert. The board's real record. . . Which doesn't actually exist, really. I'm sorry? Which doesn't exist. Well, it doesn't exist in the sense that it doesn't have a valid permit. It certainly exists in the real world. And we know it existed in the real world because truckers, the independent shipping companies whose tank trucks pulled up to the terminals, filled up, and then went to the retail truck stops, those folks had communications with High Desert representatives. They sent their invoices to High Desert. So if I call myself High Desert, then I am a company that exists, right? You are a company that you clearly exist. Under your view. As long as I call myself High Desert, then I'm an existing company. Even though I'm just, for example, just pretend, I'm just one guy, Mr. Hill. Absolutely. I'll make it even simpler for you. You can't make it much simpler. I think I'm understanding your point. This business nearly can. Okay. So that's your position. That's all it is. As long as I say I'm a company, I'm a company. That's exactly right. And to come back to the point that you asked earlier, that Mr. Heron discussed with you, are you a wholesaler? If you do that, absolutely you are. How do we know that? We know that because the statute, 8736, defines a wholesaler as somebody who sells fuel to a retailer. And if the taxpayers of the world out there had any confusion or uncertainty about that, the board publishes a guideline for wholesalers, for taxpayers. And in that, and it's part of the record here, in that guide it says you're a wholesaler if you sell to a retailer. And if there were any doubt about that, Norm Rice, who is the auditor who conducted the audit here, was asked at his deposition, and this is part of the record, suppose you don't have a license or a permit and you sell fuel to a retailer. Are you liable for the tax? And he gives the answer which everyone would give, except the board here, which is of course you're liable for the tax. And there's an obvious reason for that. If you set up a system where somebody can just become a fly-by-night thief and sell fuel at wholesale to retailers and just pockets the tax and the state says, well, you get to keep the tax, you're not responsible to pay it, that's an invitation to fraud. And the board doesn't really mean that. They mean it here only because it's the only way they can get into the only legitimate company that exists in this story. Suppose I'm Mr. Hill and I want to embezzle the tax. That's what I want to do. Right. So I'm going to sell Cool Fuels fuel and I'm going to try to hide my footsteps a little bit. But all I really want to do is embezzle the tax. I wouldn't want to hurt my employer. I just want to hurt those nasty tax people. Right. So that's what I'm going to do. How would I set that up if I'm going to embezzle the tax? Your Honor, Mr. O'Hara and I spent a full day with Mr. Hill and I'm not sure how he would do that. There are a variety of ways I can conjure that you might do that. You might misidentify the seller. Given Mr. Hill's position, it would probably be relatively easy for him to do that. There is a problem, though. Cool Fuel is not without internal controls. And typically when it sold its fuel directly to retail customers, which it didn't do very often, typically when it did, it was shipped in Cool Fuel tank trucks, which was not the case here. And it was paid for by company checks from the recipient and typically paid in advance. So with all of their interesting controls, if I were Mr. Hill and I wanted to do it, I just wanted to embezzle the tax, I would probably do it just this way, right? I would say, well, I'm going to set up a phony company. I'm going to pretend that the fuel is going to the company. I'm going to pay Cool Fuel everything they're entitled to, except the tax, and I'm going to skim the tax. He might do that. That's certainly possible. And if you say, well, does that then raise the question whether he's embezzling fuel or the tax, I don't think it does. And the reason I think it doesn't is because the premise for this whole scheme is you've got to get fuel from somewhere. That's the first thing you've got to get. And you've got to get it under false pretenses. Somehow you've got to steal it. And you can't just go up to a Texaco terminal and pull fuel out of a Texaco pipeline. It's not quite that simple. You've got to have a release number. You've got to have some inside information in order to get it. So the way it starts here is you've got to steal the fuel. And once you do that, that's an embezzlement of the fuel. Is he also stealing tax money, he and his cronies? Yeah, they surely are. But that's what he's doing. How do we know he's stealing the fuel and not tapping the till? Not tapping the till at Cool? Because Cool Fuel never got the full purchase price or full sales price. Well, no, they got the cost of the merchandise plus their profit. The part that they didn't get was the tax. Correct. How do we know that he stole the fuel and not the tax money? Because in order to make this entire scam work, the first thing you have to do is steal the fuel. If, for example, take a look at it the other way. You're just saying he stole the fuel because he stole the fuel. Well, no, I'm saying he stole the fuel because that's the only way you can steal money later on. Put it differently. Suppose you work at Costco and there are two scenarios. One, a dishonest employee takes a case of beer out the back door and sells it. Would that be a taxable transaction at Costco? Probably not. Not under the tax court ruling. Okay, suppose the same dishonest employee rings up a sale of beer at their cash register. Takes two bucks out. And takes the $2 tax out. That would be a taxable transaction. I don't understand why this isn't the second situation. Because in this case, in the second scenario that you just described, the employee rings up the sale for the case of beer, puts $20 or whatever it is in the till, and then takes two bucks out. Right. The employer, the seller in that case, and this is what the tax counsel ruling is driving at, I think. The seller in that case has gotten the $20. And the employee later steals two bucks. Well, that doesn't have anything really to do with the sale. But if what the employee does is take merchandise out the back door and resell it, that's an embezzlement. That's why my first question to you was, wasn't this rung up on Cool Fuel's cash register? Didn't this sale show up as a sale for Cool Fuel for the price of the goods sold plus its profit? The only part that didn't get into the cash register is the tax. Well, it's not just that it didn't get into the cash register. It never got rung up on the accounting records either. Right, because that's the way this guy perpetrated this thing. Well, but the way it appears on Cool Fuel's records is as a sale to a wholesaler, which in fact is what it was. If it's a sale at all, it's a sale to a wholesaler. The difference here is, the difference between this and an honest transaction is that the wholesaler, Hill and his cronies operating under the name High Desert, which the board admits they were doing, is that they simply didn't remit the tax to the state. It was an endemic problem in those days, and that's why the statute was changed. Counsel, I take it, and I hear your argument, that assuming you lose that point, I believe you're saying that there's no question of material fact anyway. It's just a question of what one projects the law to be from those material facts. So if you lose, you lose big. Well, no. Is that right? We don't send it back. We don't send it back for further trial because it couldn't conceivably be. If we just look at the facts and we say, is that an embezzlement of fuel or is it an embezzlement of tax? And if we say, well, it looks like embezzlement of tax, you lose. There's no question to be asked of the trier of fact. Is that correct? I think that's correct, Your Honor. But let me come to a different scenario. And obviously I don't like saying that, but I think that is correct. I think that's the consistent answer. By the way, should the other question I asked have sort of been more, should we just be sending this thing to the district court to review it on the right standard? No. Since it obviously used the wrong standard. Well, I'm not sure the district court did. The reason I'm not sure. Well, Atlas said it's reviewing for clear error, and it never says, and it says, well, the facts, it's a reasonable support in the facts for this, that, and the other, and it can't do that. You know that, right? Well, I think there are a couple of reasons to be somewhat skeptical that that's what the district court really meant. One is Rule 8013, which talks about appeals to the district court under a clearly erroneous standard, although I concede that that refers you to Rule 52, which concerns trials. But the other is that on a summary judgment appeal, the question isn't whether the findings of facts are clearly erroneous or not, because the underlying premise is that there isn't any dispute about facts, so there aren't facts to find, not in the sense that you're choosing among disputed facts and weighing them and that sort of thing. Well, the court, but the district court clearly says that is its standard, is it clear error. Correct? The district court uses those words. I don't know what it's talking about, but I did use those words. The district court uses those words. I don't think that's what the district court meant. And in any event, I think the issue here is that the determinations by the task force are reasonably supported by the record. The district court's. At least there's some evidence of support and things like that. The district court clearly says that. I don't think that's the way the court was looking at it, although I may be wrong about that. Maybe the words should be read more literally than I do. But the question here is whether the judgment should be affirmed, not really whether the district court's opinion about it was properly done. Well, yeah, I understand that we review de novo no matter what the district court does. But the question is, so does the Supreme Court review us de novo. But the question is, is an intermediate appellate court, should we send him back to the intermediate appellate court like the Supreme Court does with us sometimes, say an intermediate appellate court? Apply the right standards and then we'll worry about it. Your Honor, I don't think that's necessary. Okay. And I don't think it's necessary. I want to talk before I use up my clock here for a couple of moments about the grounds on which both the bankruptcy court and the district court did address. And that's the vice against Thacker issue. Well, now, I really have a problem with your interpretation of that case. Okay. It seems that you're taking it where the case doesn't go. Because the board is not seeking penalties, correct? They are not. And that's what I see as the direct holding in that case, that coal fuel can't be liable for the penalties of the tax but it doesn't excuse them for the tax. And it seems to me what the district court did was take that case and then go further and say that means that they can't be liable for the tax. Correct me where I'm wrong on that. I think you are. You can say wrong. Yeah, I think you are wrong. And I think you're misinterpreting the decision and recommendation. The decision and recommendation, the board has some arguments about that, which I think are adequately addressed in the brief. So unless the panel has questions, I'm not going to talk about those objections. But the decision and recommendation, which the board submitted twice, as it turns out, has some factual findings in it, and albeit those findings are in the context of whether coal fuel was involved in a fraud. The findings, nonetheless, are that coal fuel wasn't involved in a fraud, but Bruce Hill was, and that Mr. Hill deceived his employer, and that Mr. Hill was acting for his interest and not his employer's interest and, indeed, was adverse to his employer's interest. Now, those are the factual findings that the bankruptcy court looked at and relied upon. Those findings don't undermine in any sense or in any real way, I think, the significance of those for the vice against Thacker analysis. And the board doesn't quarrel except in one respect with vice against Thacker. It doesn't disagree with the bankruptcy judge's application or reading of that case. The board says, nor, frankly, does it disagree with those factual findings in the decision and recommendation. It clearly wishes that they hadn't submitted that to the district court or the bankruptcy court, but it doesn't disagree with those factual conclusions. The board's argument in vice against Thacker is rather that vice against Thacker shouldn't extend or have consequences for a bystander like the board who has an interest in a sale transaction. But there's nothing in vice against Thacker that suggests that, and, indeed, the bankruptcy court's analysis was, well, look, if the seller is not bound here, if you're not bound to the buyer, then there is no plausible basis on which you could say the ostensible seller is nonetheless bound to an innocent bystander who has no role in the transaction, which is where the board is. Indeed, what the board argues for, it seems to me, is a sort of perverse result here that says, look, a seller who has no obligations to a buyer in a vice against Thacker scenario, which this is, a bystander who has no position in that transaction. And that, I think, turns vice against Thacker upside down and puts it on its head and undermines the protections that that agency law provides to a defrauded principle. And that's the difficulty with the board's argument in vice against Thacker. But a defrauded principle doesn't have to pay the penalty. No. A defrauded principle has no obligations on the underlying transaction. It is entitled, if the opportunity exists, it is entitled to rescind that transaction. And if the dual agent, if the duplicitous agent in the middle, Mr. Hill in this case, has engineered a fraud that is so phenomenally successful and effective that the opportunity to undo the deal no longer exists, well, then that principle is entitled to avoid the transaction, even though he can no longer rescind it. He's not bound by the transaction. And as one way to look at this, I suppose. But where does that get he's not bound by the consequences of the transaction? He is not bound by the transaction at all. It's as if the transaction never occurred. But Coal Fuel still has all the money from the transaction. No, they don't have all the money. They're even. They don't have the taxes. They don't have the tax, clearly. At best, they're even. They don't have the fuel either. Had they had that today, it would have been worth a little more money, I suppose. But they are at best even except for $50,000, and I assure you that Morrison, Lawson's run through that talking to me. Thank you very much, Mr. Adler. Thank you, Your Honor. Thank you. Mr. O'Heron, you have about two minutes left. Thank you, Your Honor. There was no dual agency. Vice v. Thacker is inapplicable. Bruce Hill was the agent of Coal Fuel. Walsh v. Hooker, 212 Calif. 2nd, 450 at 458. Dual agency rule does not apply where the two principles of the fraudulent agent do not stand in that relationship to each other. Next, the statement was made that if these were not entered in the Coal Fuels books and records, that statement is disputed. It is a material issue of fact that cannot be decided either by the district court but must be returned to the bankruptcy court for decision. Our records, as we have submitted them to the bankruptcy court in the Rice Declaration, show that these transactions were entered in Coal Fuels' accounting system. They are scheduled in the Rice Declaration. The informal decision and recommendation. That was introduced by the Board to show that there is no claim for fraud in the Board's proof of claim. Second, the informal decision and recommendation is that informal. Coal Fuels cites to the assertion that the regulation was not enacted at the time of the hearing, which was November of 1995. What the records, what the statute shows, rather, what the regulation shows, it was enacted in December 29th, 1995, effective January 1, 1996. And at five months later, pursuant to and in accordance with the provisions of the regulation, the decision and recommendation issued. It is informal. And as established as established in the previous Coal Fuel decision, it never became final because the Board's appeal process was never completed. Thank you. Thank you for both sides. The matter just argued is submitted. We'll stand at recess for the morning.
judges: Fernandez,silverman,callahan